IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JOHN DOE, an infant, by and
through his next friend
M. DOE,

    Plaintiff,

v.                                 CIVIL ACTION NO. 1:16-08318

THE BOARD OF EDUCATION
OF THE COUNTY OF MERCER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Board of Education of the County of Mercer's renewed motion to dismiss. (ECF No. 42). For reasons appearing to the court, that motion is **GRANTED**.

### I. Background

According to the complaint, the allegations of which are taken as true for purposes of this motion, during the 2014-2015 school year, John Doe was a student at Pikeview Middle School in Mercer County, West Virginia. See Complaint ¶ 9. John Doe has been diagnosed as suffering from Attention Deficit/Hyperactivity Disorder (ADHD) and Mild Mental Retardation. See id. at ¶ 10. Because of his "developmental delays" John Doe received special education services while attending public schools and has an Individualized Education Plan (IEP) that "places him in the Moderately Mentally Impaired Program." Id. at ¶ 8. Significantly, for purposes of this motion, the complaint alleges

that "Mercer County Board of Education acting through its employees and/or agents knew or should have known that the Plaintiff had a history of touching others <u>as noted in his IEP</u>." <u>Id.</u> at ¶ 13 (emphasis added).

John Smith was a fellow student of John Doe's "who also has developmental and mental impairments." <u>Id.</u> at ¶ 14. The complaint alleges that John Doe and John Smith "were directed to collect attendance reports from various classrooms and take them to the school office." <u>Id.</u> at ¶ 12. On or about May 4, 2015, John Doe and John Smith were caught in a bathroom stall "performing sex acts." <u>Id.</u> at ¶ 14.

M. Doe is the mother of John Doe. <u>See</u> <u>id.</u> at ¶ 6. On August 29, 2016, John Doe, by and through M. Doe, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against The Board of Education of the County of Mercer ("BOE"). According to the Complaint, in directing John Doe to collect the attendance sheets while unsupervised, the BOE created the danger which led to plaintiff's injury. Therefore, plaintiff argues the BOE is liable under § 1983. <u>See</u> Complaint generally.

The BOE has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In so doing, the BOE argues that the alleged injury suffered by John Doe "was not a foreseeable risk of any danger alleged by Plaintiff." ECF No. 42 at ¶ 7.

## II. Standard of Review

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir. 1997).

In evaluating the sufficiency of a pleading, the cases of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (quoting Conley v.

3

Gibson, 355 U.S. 41, 47 (1957); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) (quoting Twombly, 550 U.S. at 570).

According to Iqbal and the interpretation given it by our appeals court,

> [L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. See Iqbal, 129 S. Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1951-52.
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to

4

> plausible.'" Id. at 1952 (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).
>
> Satisfying this "context-specific" test does not require "detailed factual allegations." Id. at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." Id. at 1950. Without such "heft," id. at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," id. at 1949, fail to nudge claims "across the line from conceivable to plausible." Id. at 1951.

Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009). When considering a 12(b)(6) motion, a court must accept all of the complaint's factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiff. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md., 684 F.3d 462, 467 (4th Cir. 2012).

### **III. Analysis**

Section 1983 imposes liability on state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution." Under established precedent, these constitutional rights include a Fourteenth Amendment substantive due process right against state actor conduct that deprives an individual of bodily integrity. See, e.g., Hall v. Tawney, 621 F.2d 607, 612-13 (4th Cir. 1980)). Accordingly, state actions that result in sexual abuse of children can be actionable under § 1983. See Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994) (addressing a "student's constitutional right to bodily integrity in physical sexual abuse cases"); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3rd Cir. 1989) (recognizing § 1983 liability for school administrators' "actions in adopting and

5

maintaining a practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers").

Doe v. Rosa, 795 F.3d 429, 436-37 (4th Cir. 2015).

"State actor liability, however, is significantly limited." Id. at 437. The law is clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).[1] There are, however, two exceptions to this general rule. See Rosa at 437 ("[S]tate actor liability might attach in two narrow circumstances."). In DeShaney, the Supreme Court noted that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor

---

[1] In DeShaney, the petitioner was a child "who was beaten and permanently injured by his father, with whom the child lived." DeShaney, 489 U.S. at 191. The respondents were social workers and other local officials who received complaints that the child was being abused by his father, but did not act to remove the child from his father's custody. See id. The petitioner filed suit against the respondents, alleging that "their failure to act deprived him of his liberty in violation of the Due Process Clause of the Fourteenth Amendment." Id. The Supreme Court disagreed, holding "[a]s a general matter," that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197. In reaching this decision, the Supreme Court emphasized that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195. "Its purpose was to protect people from the State, not to ensure that the State protected them from each other." Id.

6

did it do anything to render him more vulnerable to them." DeShaney, 489 U.S. at 201. Relying on this passage, courts have acknowledged "that there may be possible constitutional liability when the state creates a dangerous situation or renders citizens more vulnerable to danger." Butera v. District of Columbia, 235 F.3d 637, 648-49 (D.C. Cir. 2001) (citing decisions from every circuit). The first exception revolves around individuals in a "special relationship" with the state. See Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995)(en banc).[2] The second revolves around circumstances in which the state has created or increased the danger faced by an individual. See id. at 1176-77.

The state-created danger exception does not apply when officials merely fail to act. As the United States Court of Appeals for the District of Columbia explained in Butera:

> [T]he circuits have held that a key requirement for constitutional liability is affirmative conduct by the State to increase or create the danger that results in harm to the individual. No constitutional liability exists where the State actors had no hand in creating the danger but [simply] stood by and did nothing when suspicious circumstances dictated a more active role for them. Absent such affirmative conduct by the State

---

[2] To the extent that plaintiff argues the special relationship exception applies, that argument is without merit. "Uniformly, the courts have held that a school-student relationship does not constitute a special relationship `because the student is not in physical custody and, along with parental help, is able to care for his basic human needs.'" Shores v. Stafford Cnty. Sch. Bd., No. Civ. A. 04-1325, 2005 WL 2071730, *3 (E.D. Va. Aug. 26, 2005) (quoting Stevenson v. Martin County Bd. of Educ., 3 F. App'x 25, 31, 2001 WL 98358 (4th Cir. Feb. 6, 2001)).

7

>    to endanger an individual, courts have rejected
>    liability under a State endangerment concept.

Butera, 235 F.3d at 650 (internal citations and quotations omitted). "Failure to act, as opposed to affirmative conduct, does not cause a `state-created danger' to arise." Brooks v. Knapp, 221 F. App'x 402, 407, 2007 WL 725741 (6th Cir. Mar. 7, 2007).

In Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995), the United States Court of Appeals for the Fourth Circuit considered DeShaney's state-created danger exception. Rejecting Pinder's reliance on the exception, the Fourth Circuit held that, "[a]s was true in DeShaney, the state did not 'create' the danger, it simply failed to provide adequate protection from it." Id. In so doing, the court noted that "'the most that can be said of the state functionaries . . . is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.'" Id. (quoting DeShaney, 489 U.S. at 203).

Twenty years after Pinder was decided, the Fourth Circuit once again examined the "affirmative act" requirement in the state-created danger context. See Rosa, 795 F.3d 429.

>    Under the narrow limits set by DeShaney and
>    Pinder, to establish § 1983 liability based on a state-
>    created danger theory, a plaintiff must show that the
>    state actor created or increased the risk of private
>    danger, and did so directly through affirmative acts,
>    not merely through inaction or omission. Put another
>    way, "state actors may not disclaim liability when they
>    themselves throw others to the lions," but that does
>    not "entitle persons who rely on promises of aid to

8

some greater degree of protection from lions at large." Pinder, 54 F.3d at 1177.

Rosa at 439. The Rosa court went on to warn of attempts to characterize inaction as action.

> "Affirmative acts," in the state-created danger context, are quite limited in scope. "It cannot be that the state `commits an affirmative act' . . . every time it does anything that makes injury at the hands of a third party more likely." Pinder, 54 F.3d at 1175 ("If so, the state would be liable for every crime committed by the prisoners it released."). And although "inaction can often be artfully recharacterized as `action,' courts should resist the temptation to inject this alternate framework into omission cases." Id. at 1176 n.*. The "concept of `affirmative acts'" should not extend "beyond the context of immediate interactions between the [state actor] and the plaintiff." Id.

Id. at 441; see also Stevenson v. Martin County Bd. of Educ., 3 F. App'x 25, 31, 2001 WL 98358 (4th Cir. Feb. 6, 2001) ("In order to create a danger, the state has to take some affirmative steps. Liability does not arise when the state stands by and does nothing in the face of danger.").

In this case, plaintiff's claim must be dismissed because she has failed to allege "affirmative acts" that would subject defendant to § 1983 liability on a theory of state-created danger. Plaintiff attempts to characterize the BOE's conduct in light of an affirmative act, i.e., directing John Doe to collect attendance reports. However, distilled to its essence, plaintiff's complaint is really one of inaction, i.e., a failure

9

to supervise.  Indeed, a close reading of plaintiff's complaint reveals as much.

>    15. That the Mercer County Board of Education acting through its employees and/or agents created or increased the danger of the aforementioned occurrence by directing John Doe and John Smith to collect attendance reports <u>without any supervision for unmeasured amounts of time</u>.
>
>    16. That the decision to direct Plaintiff to collect attendance sheets <u>unsupervised for unmeasured amounts of time</u> is an affirmative act by the Mercer County Board of Education and its employees and/or agents.
>
>    17. That the Mercer County Board of Education <u>had a duty to protect</u> John Doe from himself and other students and <u>failed to protect</u> John Doe as it created or increased the danger or damage John Doe may cause himself or be caused by others, when it committed an affirmative act by directing John Doe to collect attendance sheets <u>while being unsupervised for unmeasured amounts of time</u>.
>
>    18. That the Mercer County Board of Education <u>had a duty to monitor and supervise</u> John Doe while he was in the custody and control of the Mercer County Board of Education.
>
>    19. That it was foreseeable John Doe may engage in activities that were harmful to his person or others if directed to collect attendance sheets <u>unsupervised without an agent of the Mercer County Board of Education</u> or by electronic means.  Furthermore, being directed to collect attendance sheets <u>while being unsupervised for unmeasured amounts of time</u> by an agent of the Mercer County Board of Education or by electronic means was the direct cause of harm suffered by Plaintiff, as he could not have suffered such harm had he [ ] not been directed to perform said activity <u>and been properly supervised</u>.
>
>    20. That but for the act of directing Plaintiff to collect attendance sheets <u>unsupervised for unmeasured amounts of time</u> by Mercer County Board of Education, acting through its employees and/or agents, the Plaintiff would not have suffered damages.

10

21. That the Mercer County Board of Education, acting through its employees/agents, demonstrates a degree of culpability that shocks the conscience as they directed students with developmental and mental impairments to be <u>unsupervised for unmeasured amounts of time</u> creating or <u>increasing the opportunity for them to engage in foreseeable harmful conduct</u>.

22. That there is a relationship between the Mercer County Board of Education and the Plaintiff in that it was foreseeable for [sic] the Mercer County Board of Education that the Plaintiff may commit harmful conduct to himself or others if directed to perform tasks <u>while unsupervised for unmeasured amounts of time</u>.

23. That the Mercer County Board of Education, acting through its employees/agents, used its authority to create the danger to Plaintiff as it had custody and control over the Plaintiff and had the authority to direct the Plaintiff to collect attendance sheets <u>while being unsupervised for unmeasured amounts of time</u>. Additionally, the Mercer County Board of Education, acting through its employees and/or agents, directed the aforementioned activity and failed to adequately protect the Plaintiff from the foreseeable harm which could result <u>from being unsupervised for unmeasured amounts of time</u> making the Plaintiff more vulnerable to harm.

24. That the Defendant acted in willful disregard for the safety of the Plaintiff by <u>failing to supervise</u> the Plaintiff in an activity that the Defendant directed the Plaintiff to perform.

25. That by directing the Plaintiff to collect attendance sheets and <u>failing to properly supervise said activity</u>, the Defendant and its employees and/or agents increased or created the danger in [sic] which caused the Plaintiff to harm himself.

27. That the Mercer County Board of Education breached its duties owed to John Doe by <u>failing to exercise reasonable care in protecting and supervising him</u>, from foreseeable harm due to being directed to perform an activity <u>while being unsupervised</u>.

29. . . . The damages and harms suffered by the Plaintiff is fairly directly related to the affirmative acts of

11

the employees and/or agents of the Mercer County Board of Education, which directed Plaintiff and John Smith to perform certain tasks <u>while being unsupervised for an unmeasured amount of time</u>.

30. That the Mercer County Board of Education, acting through its employees and/or agents which directed Plaintiff, a student with developmental and mental impairments with a history of touching others, to perform an activity with another student who also suffers developmental and mental impairments, <u>unsupervised for unmeasured amounts of time</u> equals a degree of culpability that shocks the conscience.

31. That the Mercer County Board of Education, acting through its employees and/or agents, had a relationship with the Plaintiff, which makes the injuries and damages suffered by the Plaintiff foreseeable as the Mercer County Board of Education acting through its employees and/or agents had knowledge of Plaintiffs [sic] propensities to touch others and of his developmental and mental impairments which increases the likelihood of harm to the Plaintiff and others if he was <u>unsupervised for unmeasured amounts of time</u> with John Smith.

32. That the Mercer County Board of Education acting through its employees and/or agents used its authority to direct Plaintiff and John Smith to collect attendance sheets and deliver them to the office <u>unsupervised and for unmeasured amounts of time</u> rendered the Plaintiff more vulnerable to danger than he would have been had the Mercer County Board of Education acting through its employees and/or agents not acted and directed such activity to occur.

35. That the Mercer County Board of Education, acting by its employees and/or agents, committed an affirmative act that created, or substantially contributed to the creation of, a danger to the Plaintiff by directing him to collect attendance sheets, <u>while unsupervised for unmeasured amounts of time</u> which made him more vulnerable to a danger than he otherwise would have been.

36. That is was foreseeable that John Doe may engage in activities that were harmful to his person <u>if allowed to roam the school unsupervised by an agent of the</u>

12

Mercer County Board of Education or by electronic means and that being allowed to roam the school unsupervised by an agent of the Mercer County Board of Education or by electronic means was the direct cause of the harm suffered by Plaintiff as he could not have suffered such harm <u>had he been properly supervised</u> as Plaintiff had a history of touching others.

37. That the Defendant acted in willful disregard for the safety of the Plaintiff by <u>allowing him to roam freely through the school without supervision</u>.

38. That the Defendant knew of the potential danger of harm to Plaintiff and other students by <u>allowing Plaintiff to be unsupervised for unmeasured amounts of time</u> knowing that Plaintiff had a propensity to touch others and disregarded such knowledge and allowed two mentally deficient students to <u>roam the school unsupervised for a[n] unmeasured time</u> creating an excessive risk of harm and/or safety to the Plaintiff and others.

40. That the Mercer County Board of Education, acting through its employees/agents, used its authority to create the danger to Plaintiff as it had custody and control over the Plaintiff and had the authority to allow the Plaintiff <u>to freely roam the school unsupervised</u>. Additionally, <u>by allowing the Plaintiff to roam freely unsupervised</u>, the Defendant's acts rendered Plaintiff more vulnerable, as Plaintiff had opportunity and time to cause harm to himself <u>being unsupervised, had he not been allowed to freely roam the school unsupervised</u>.

43. That an employee and/or agent of the Defendant, Mercer County Board of Education, committed an affirmative act that demonstrates gross negligence or a reckless indifference for the safety of Plaintiff by assigning Plaintiff <u>the task of roaming the schools unsupervised, with no time restriction</u> to collect attendance sheets from various classrooms knowing that John Doe had developmental, mental deficiencies and a propensity to touch others.

45. That the aforementioned act by an employee and/or agent of the Defendant, Mercer County Board of Education, was foreseeable to cause the Plaintiff harm as he suffered from developmental and mental impairments and would

> likely harm himself or others if directed to perform tasks <u>while unsupervised without time restrictions</u>.

Complaint ¶¶ 15-25, 27, 29-32, 35-38, 40, 43, and 45 (emphasis added). As the foregoing excerpts from the complaint make clear, plaintiff's assertions are "an attempt to redefine passive inaction as action that is affirmative." <u>Wormuth v. Lammersville Union Sch. Dist.</u>, 305 F. Supp. 3d 1108, 1122 (E.D. Cal. 2018) (rejecting state-created danger theory based upon a public school principal's failure to detect and prevent student-on-student harassment where, among other things, principal did not help supervise child "despite promising to do so" and denied parents' request to remove child from class); see also <u>Rosa</u>, 795 F.3d at 441 ("the Does' claim against Rosa is purely an omission claim, and no amount of semantics can disguise the fact that the real affirmative act here was committed by [the abuser], not by [the school official]") (internal quotations and citations omitted); <u>Turner v. Thomas</u>, 313 F. Supp. 3d 704, 714 (W.D. Va. 2018) (rejecting plaintiff's attempt to assert a state-created danger claim where "[t]here was simply no affirmative act by police that created the danger that befell Plaintiff. Framing the incident in terms of a `stand down' order is nothing more than an `artful recharacterization' of inaction as action—something the Fourth Circuit in <u>Pinder</u> warned was inappropriate."); <u>Doe v. Berkeley County Sch. Dist.</u>, 189 F.3d 573, 580 (D.S.C. 2016) (rejecting a state-created danger claim arising out of student-on-student

14

sexual assault where "Complaint's frequent use of terms such as `create,' `increase,' and `affirmative act' does not transform [school offical]'s failure to do more for [student] into state-created danger."); Semple v. City of Moundsville, 963 F. Supp. 1416, 1428 (N.D.W. Va. 1997) ("[P]laintiffs have not established that the Moundsville Police Department took any affirmative action to create or enhance the danger that existed from Michael's behavior. This Court finds that this case is a quintessential `failure to act' case. The undisputed facts contain specific examples of police inaction. . . . None of these facts, however, show that the police took any affirmative action to increase the danger. . . . Rather, the `acts' outlined above, even if negligent, are examples of inaction rather than intentional affirmative acts.") (emphasis in original). .

As the Wormuth court explained, "[h]ow courts apply the state-created danger doctrine varies across jurisdictions, but it is construed narrowly; it does not ensnare state officials when they increase someone's exposure to harm." Wormuth, 305 F. Supp. 3d at 1122 (citing Huffman v. Cty. of Los Angeles, 147 F.3d 1054, 1061 (9th Cir. 1998)). To accept plaintiff's invitation in this case to recast inaction as action, "would turn the state-created danger exception into the rule." Id. This, the court declines to do.

15

## IV. Conclusion

For the reasons discussed above, the motion to dismiss is **GRANTED**.[3] The Clerk is requested to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 22nd day of March, 2019.

ENTER:

David A. Faber
Senior United States District Judge

---

[3] Citing a number of cases outside the Fourth Circuit, defendant moved to dismiss the case based upon an alleged lack of foreseeability. Given the court's ruling herein, the court does not address defendant's argument regarding foreseeability.